# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| FORD MOTOR COMPANY, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | C.A. No. N23C-06-237 PRW CCLD |
| ) | |
| EARTHBOUND LLC, ) | |
| ) | |
| Defendant/Counterclaim Plaintiff. ) | |

Submitted: April 11, 2024
Decided: June 5, 2024

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiff Ford Motor Company's Motion for Judgment on the Pleadings,*
**DENIED.**

*Upon Defendant Earthbound LLC's Cross-Motion for Judgment on the Pleadings,*
**DENIED.**

Christian J. Singewald, Esquire, Timothy S. Martin, Esquire, Daryl Hawthorne-Bernardo, Esquire, WHITE & WILLIAMS LLP, Wilmington, Delaware; Wook Hwang, Esquire, Keane Barger, Esquire, LOEB & LOEB LLP, New York, New York, *Attorneys for Plaintiff/Counterclaim Defendant Ford Motor Company*.

Adam L. Balick, Esquire, Melony Anderson, Esquire, BALICK & BALICK, LLC, Wilmington, Delaware; Louis S. Ederer, Esquire, Matthew T. Salzmann, Esquire, ARNOLD & PORTER, New York, New York, *Attorneys for Defendant/Counterclaim Plaintiff Earthbound LLC*.

**WALLACE, J.**

Ford entered into an agreement with Earthbound to license its corporate trademarks. Pursuant to that agreement, Earthbound was required to remit the royalties it received back to Ford, less the compensation percentage it was contractually entitled to. The agreement also provided terms governing compensation after the agreement's termination.

Later on, Ford informed Earthbound of its intent to end the partnership at the expiration of the agreement's term. When that expiration date arrived, though, the parties agreed to temporarily extend the agreement. Ford then terminated the agreement pursuant to the agreement's terms.

Next, Earthbound informed Ford of the royalties it received during and after the temporary extension. Ford asked Earthbound to remit those royalties, but Earthbound did not. So, Ford brought this action, alleging breach of contract and unjust enrichment and seeking declaratory judgment. Earthbound answered and counterclaimed, alleging breach of contract.

Ford now moves for judgment on its pleadings. Ford says that the agreement unambiguously conditions Earthbound's compensation during the temporary extension on remitting the royalties it received, and Earthbound's admitted failure to so remit precludes its ability to receive such. Ford further says that Earthbound's admitted failure to remit those royalties entitles Ford to judgment, as to liability only, on its breach of contract and unjust enrichment claims. And Ford says that

Earthbound's counterclaim fails as a matter of law. Earthbound opposes the motion, and cross-moves for judgment on the pleadings on Ford's declaratory judgment claim.

Ford and Earthbound have both proffered reasonable interpretations of the agreement's provisions governing compensation during the temporary extension. For that reason, neither party is entitled to judgment on Ford's pleading. And because the breach-of-contract and unjust enrichment claims have lingering factual disputes, those counts cannot be adjudicated now either.

And so, for the reasons further explained now, Ford's motion for judgment on its Counts I, II, and III is **DENIED**; Earthbound's motion for judgment on Ford's Count III is **DENIED**, and; Ford's motion for judgment on Earthbound counterclaim is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. THE PARTIES

Ford Motor Company is a corporation organized in Delaware with its

---

[1] This background is drawn from the pleadings, which include the Amended Complaint, Earthbound's Answer and Counterclaim, Ford's Answer to Earthbound's Counterclaim, and the documents incorporated therein. *See D'Antonio v. Wesley Coll., Inc.*, 2023 WL 9021767, at *2 (Del. Super. Ct. Dec. 29, 2023) ("On a Civil Rule 12(c) motion, the Court considers all pleadings, including the complaints, answers, documents integral to the pleadings, such as those attached as exhibits or incorporated by reference, and facts subject to judicial notice." (internal quotations and citations omitted)).

principal place of business in Michigan.[2] Ford is the owner of trademarks associated with its automotive brand.[3]

Earthbound LLC is a limited liability company organized in Delaware with its principal place of business in New York.[4] Earthbound represents owners of corporate trademarks as a brand licensing agent.[5]

## B. THE WORLDWIDE REPRESENTATION AGREEMENT

Ford and Earthbound entered into the Worldwide Representation Agreement ("WRA" and collectively with its amendments, "Agreement") on January 1, 2019.[6] Pursuant to the WRA, Earthbound agreed to act as Ford's representative in finding potential offers from prospective licensees and negotiating potential license agreements, as well as to service all license agreements they had negotiated.[7] Earthbound additionally agreed to service license agreements that had been negotiated and concluded by Ford's previous licensing agent.[8] The following provisions of the WRA and its amendments are relevant to these cross-motions.

---

[2] Amended Complaint ("Am. Compl.") ¶ 8 (D.I. 2).

[3] *Id.* ¶ 1.

[4] *Id.* ¶ 9.

[5] *Id.* ¶ 2.

[6] *See generally id.*, Ex. A ("WRA"). The WRA was amended by the parties three times. *See id.*, Ex. B ("First Amendment"); *id.*, Ex. C ("Second Amendment"); *id.*, Ex. E ("Third Amendment").

[7] WRA ¶ 6.

[8] *Id.* ¶ 7(d).

WRA Section 3, in pertinent part, provides the Agreement's term:

> The term of this Agreement shall commence on January 1, 2019 and, subject to earlier termination as hereinafter provided, shall continue until December 31, 2021 ("Initial Term"), which may be extended to December 31, 2023 by mutual agreement of the Parties no later than ninety (90) calendar days before the end of the Term.[9]

Section 1(b) of the WRA defines the types of licensing agreements as follows:

> "License Agreement" shall be defined as an agreement or arrangement, executed by FORD and a licensee or third-party during the Term, for merchandising rights for one or more of the Properties in connection with one or more of the Licensed Products and for the Territory only, subject to which agreement or arrangement FORD is entitled to a royalty or similar compensation from the licensee based on sales . . . .
>
> "New License Agreement" shall be defined as a merchandising license agreement between FORD and a third party for a Property for the Licensed Products that is solicited and negotiated by Representative and executed by Ford during the Term of this Agreement.
>
> "Servicing-Only License Agreement" shall be defined as a merchandising license agreement which was negotiated and concluded solely by FORD's licensing agent, Global Icons, prior to the Representation Agreement that is renewed, extended or otherwise maintained during the Initial Term of this Agreement.[10]

Section 6 governs the parties' obligations. Relevant to this dispute are sub-sections (e) and (j), in which Earthbound specifically agrees to do at least the following:

> provide for the servicing of all License Agreements negotiated by Representative in accordance with this Agreement as well as any Servicing-Only License Agreements . . . .[11]

---

[9]  *Id.* ¶ 3 (as amended by Second Amendment ¶ 4).

[10]  *Id.* ¶ 1(b) (as amended by Second Amendment ¶ 3).

[11]  *Id.* ¶ 6(e).

solicit and negotiate proposed License Agreements for FORD to approve and enter into, and adhere to all known policies, procedures, and guidelines communicated to Representative by FORD from time to time in FORD's discretion with respect to recommending that FORD enters into License Agreements . . . .[12]

Section 6(j)(ii) further states that "FORD and/or its affiliated companies shall in their commercially-reasonable discretion consider all proposals presented by Representative that comply with the Annual Business Plan, though FORD shall at all times have sole discretion whether to enter into a License Agreement based on any proposal."[13]

Section 7 is titled "Gross Revenue and Compensation."[14]  The entire section is relevant to this dispute.  Section 7(a) defines "Gross Revenues" as,

all monies of every kind and nature, which are due to FORD pursuant to all License Agreements, inclusive of advances, minimum guarantees, royalties, deposits, and monetary corrections, less only the following: (i) unrecoverable sales, excise, or value added taxes; and (ii) any legal fees, any audit or collection costs incurred in collecting amounts due under the applicable License Agreements; and (iii) interest and any other late payment charges whatsoever and/or any other deductions as pursuant to any License Agreement.[15]

Section 7(c) governs Earthbound's compensation.  It states that, "[s]ubject to Representative's performance of the terms and conditions of this Agreement and on

---

[12]  *Id.* ¶ 6(j).

[13]  *Id.* ¶ 6(j)(ii).

[14]  *Id.* ¶ 7.

[15]  *Id.* ¶ 7(a) (as amended by Second Amendment ¶ 6).

the condition that Representative is not in default or otherwise in breach hereof and as compensation in full for all of Representative's services hereunder," Earthbound is entitled to receive compensation as follows:

> for New License Agreements, Representative shall be entitled to twenty six percent (26%) of Gross Revenues. In the event New License Agreements (executed as of the Effective Date of the Agreement) achieve the following royalty thresholds, per each calendar year, Representative shall be entitled to the following Compensation: (a) for every additional dollar ($1.00) of Gross Revenues between $4,000,000 and $6,000,000, Representative's Compensation shall be equal to twenty-seven percent (27%) of such Gross Revenues; (b) for every additional one dollar ($1.00) of Gross Revenues above $6,000,000, Representative's Compensation shall be equal to twenty-eight percent (28%) of such Gross Revenues.
>
> for Servicing-Only License Agreements, Representative shall be entitled to seventeen and one half percent (17.5%) of Gross Revenues during the Initial Term of this Agreement. During any extension term after the Initial Term of this Agreement, such Servicing-Only License Agreements shall convert to New License Agreements, and shall be subject to Representative's Compensation as provided for in Paragraph 7(c)(i) above, at the rate of twenty-six percent (26%) of Gross Revenues, for the remainder of the Term.[16]

According to Section 7(d), "[a] reference to 'Compensation' in this Agreement shall be a reference to the Representative's commissions and compensation described in Paragraph 7(c) as the case may be. For the avoidance of doubt, Compensation shall be paid on all amounts notwithstanding that licensees

---

[16] *Id.* ¶ 7(c) (as amended by Second Amendment ¶ 6).

may be required by applicable law to deduct for any withholding taxes."[17]

Section 7(e) governs "Tail Compensation."[18] It states:

> Except as otherwise provided for in this Agreement, after the expiration of the Initial Term and any extension hereof, provided that Representative shall have complied with all of its obligations hereunder, Representative shall be entitled to seventy (70%) of Representative's Compensation actually received under New License Agreements and New Referred License Agreements, for a period of twenty-four (24) months after such termination or expiration of this Agreement (with a pro rata payment for any partial portion of the final calendar month, if applicable) . . . .[19]

The section further states that:

> For the avoidance of doubt, Representative shall be entitled to receive the foregoing percentages of Compensation with respect to all Royalties under New License Agreements and New Referred License Agreements that are earned prior to, but received after, any of the foregoing applicable periods.[20]

And the section continues:

> For further avoidance of doubt, it is agreed that in the event this Agreement is terminated by FORD pursuant to Paragraph 12 hereof, Representative shall no longer be entitled to any Compensation hereunder, and it is further agreed that after expiration or termination of this Agreement for any reason Representative shall no longer be entitled to Compensation for Servicing-Only License Agreements as defined above.[21]

---

[17]  *Id.* ¶ 7(d) (as amended by Second Amendment ¶ 6).

[18]  *Id.* ¶ 7(e) (as amended by Second Amendment ¶ 6).

[19]  *Id.*

[20]  *Id.*

[21]  *Id.*

Section 8 is titled "Statements, Payments, and Audits."[22]  Sub-section (a) governs

royalty payments made to Earthbound.  It states, in pertinent part:

> Within thirty (30) days after the end of each calendar month, Representative shall furnish FORD with a full and accurate statement of all Royalties actually received by Representative during the preceding calendar month under any License Agreements, together with copies of all Royalty reports received from licensees pursuant to such License Agreements . . . . Simultaneously with the submission of such statement, Representative shall pay to FORD its Royalties; *provided* that Representative may deduct therefrom its fee with respect to any such Royalties and remit only the net amount to FORD . . . . Late payments shall bear interest at a rate equal to the prime rate as published in the Wall Street Journal per month until paid.[23]

Section 8(c) governs Earthbound's royalty payments to Ford.  It provides:

> If Representative (i) is more than thirty (30) calendar days late in paying FORD its share of Gross Revenues twice in any one calendar year, (ii) materially underpays FORD its share of Gross Revenues twice in any one calendar year (and does not cure within thirty (30) calendar days from notice from FORD in each instance), . . . FORD shall have the right, but not the obligation, at any time upon written notice to Representative, to elect to directly receive payments under any or all License Agreements covered by this Agreement and to pay to Representative its Compensation. While FORD is receiving payments under this subsection, Representative's Compensation shall be reduced to 15%.[24]

Finally, WRA Section 15 is titled "Default."[25]  Under that section, "[t]he following

shall be a default under the Agreement (hereinafter "a breach"): (i) A breach by

---

[22]  *Id.* ¶ 8.

[23]  *Id.* ¶ 8(a) (italics in original).

[24]  *Id.* ¶ 8(c).

[25]  *Id.* ¶ 15.

Representative of any of Representative's obligations, representations or warranties; or (ii) Representative's failure to pay Representative's debts when due . . . ."[26]

## C. THE WRA'S EXPIRATION AND THIRD AMENDMENT

In June 2021, Ford advised Earthbound that Ford would not be extending the WRA's term upon its end-of-year expiration, and that Ford would be working with another licensing representative moving forward.[27] Despite Earthbound's requests for a transition plan, the term expired at the end of December without a plan in place and without a new Ford licensing representative.[28]

Concerned, Earthbound reached out to Ford in early January asking for an update.[29] After Ford's short reply[30] and no further action, Earthbound gave Ford two options: either (i) formally notify all licensees that Earthbound is no longer representing Ford, or (ii) agree to a short-term extension of the Agreement.[31]

In response, Ford agreed to temporarily extend its partnership with Earthbound. The parties entered into the Third Amendment, extending the Agreement's Initial Term as follows:

---

[26] *Id*. ¶¶ 15(a)(i)-(ii).

[27] Am. Compl. ¶ 31; Defendant's Answer to the Amended Complaint, Affirmative Defenses, and Counterclaim ("Earthbound's Counterclaim") ¶ 20 (D.I. 17).

[28] Earthbound's Counterclaim ¶ 26; Ford's Answer to Counterclaim ("Ford's Ans.") ¶¶ 23, 26 (D.I. 21).

[29] Am. Compl., Ex. D (January 3, 2022 Email from Earthbound to Ford).

[30] *Id*. (January 3, 2022 Response Email from Ford to Earthbound).

[31] *Id*. (January 5, 2022 Email from Earthbound to Ford).

The term of the Agreement is hereby extended, commencing January 1, 2022 and terminating on January 24, 2022 (the "Extension Term"). Upon expiration thereof, the Extension Term will be automatically extended for one-week periods, and thereafter, the then-current Extension Term will continue to be automatically extended for successive one-week-periods. Either party may terminate the Extension Term upon 24 hours' written notice (email is sufficient), provided that Representative may terminate the ongoing provision of services, but shall complete the Wind-Down Responsibilities notwithstanding any termination by Representative.[32]

### D. FORD'S TERMINATION AND EARTHBOUND'S WITHHELD ROYALTIES

From January 1, 2022 to February 8, 2022, Ford and Earthbound continued their partnership under the Third Amendment.[33] Ford then terminated the Agreement on February 8.[34] That following May, Earthbound submitted a summary of royalties to Ford that reflected a deduction of Earthbound's compensation.[35] Although there are few specifics in the pleadings about the summary report and the withheld royalties, the following facts are agreed upon between the parties:

- From January 1 through February 8, Earthbound received at least $2,973,219.34 of royalties from Ford's brand licensees;[36]

- Earthbound paid $675,423.45 of that amount to Ford's previous brand licensing agent, and therefore still possessed $2,297,795.91;[37]

- Earthbound received at least an additional $2,248,473.95 of Ford's

---

[32]  Third Amendment ¶ 2.

[33]  Am. Compl. ¶¶ 35-38.

[34]  *Id.* ¶ 38.

[35]  Earthbound's Counterclaim ¶ 41.

[36]  Am. Compl. ¶ 40.

[37]  *Id.* ¶ 41.

royalties sent to Earthbound by Ford's brand licensees after February 8;[38] and,

- Ford did not provide royalty reports to Earthbound.[39]

Ford thereafter sent correspondence to Earthbound on three separate occasions[40] to "notify Earthbound of its breach of the Agreement by refusing to remit royalties due to Ford and to demand the remittance of those royalty amounts to Ford forthwith."[41] Ford's notice claimed that the "Agreement unambiguously required Earthbound to remit *at least* **$1,503,364.26** in net royalties to Ford on or before March 30, 2022."[42] Earthbound did not remit, so Ford brought suit here.

### E. PROCEDURAL BACKGROUND

Ford filed its initial complaint with this Court last July,[43] and amended that complaint the next month.[44] The Amended Complaint contains three counts: breach of contract against Earthbound (Count I);[45] unjust enrichment against Earthbound (Count II),[46] and; declaratory judgment against Earthbound (Count

---

[38] *Id.* ¶ 46.

[39] Earthbound's Counterclaim ¶ 43.

[40] Am. Compl. ¶ 59.

[41] Am. Compl., Ex. F (Ford's Breach Notice).

[42] *Id.* (emphasis in original).

[43] D.I. 1.

[44] *See generally* Am. Compl.

[45] *Id.* ¶¶ 61-66.

[46] *Id.* ¶¶ 67-71.

III).[47]

Earthbound answered, counterclaimed, and raised affirmative defenses.[48] Earthbound's counterclaim alleges breach of contract against Ford.[49]

The parties have now submitted cross-motions for judgment on the pleadings. Ford moves for an order: (1) granting Ford's a declaratory judgment; (2) granting, as to liability only, Ford's breach-of-contract and unjust enrichment claims; (3) dismissing Earthbound's counterclaim for breach of contract, and; (4) dismissing Earthbound's affirmative defenses.[50] Earthbound opposes Ford's motion, and cross-moves for an order granting judgment on the pleadings to Earthbound on Ford's prayer for declaratory judgment.[51] The Court heard oral argument and denied Ford's motion for judgment on Earthbound's affirmative defenses from the bench.[52] The parties' remaining motions are now ripe for decision.

## II. PARTIES' CONTENTIONS

Ford first seeks a declaration that Earthbound is not entitled to Tail

---

[47]  *Id.* ¶¶ 72-83.

[48]  *See generally* Earthbound's Counterclaim.

[49]  *Id.* ¶¶ 44-48.

[50]  *See generally* Ford Motor Company's Motion for Judgment on the Pleadings ("Ford's Mot.") (D.I. 25).

[51]  *See generally* Earthbound LLC's Brief in Opposition to Ford Motor Company's Motion for Judgment on the Pleadings and in Support of Earthbound LLC's Motion for Judgment on the Pleadings ("Earthbound's Mot.") (D.I. 34).

[52]  D.I. 40.

Compensation because it failed to satisfy that section's condition precedent.[53] Ford posits that the pleadings indisputably establish Earthbound's failure to timely remit, so the Court should declare that Earthbound is not entitled to any Tail Compensation based on the WRA's plain language.[54]

Ford also moves for judgment on its breach-of-contract and unjust enrichment claims.[55] Ford's breach-of-contract claim states that Earthbound materially breached the contract by failing to remit the royalties received pursuant to Section 8 of the WRA.[56] Ford's unjust enrichment claim states that after February 8, 2022, Earthbound was enriched by at least $2,248,473.95 of Ford's royalties.[57]

Last, Ford moves for judgment on the pleadings on the counterclaim Earthbound brought against it.[58] Earthbound's counterclaim alleges that Ford breached the Agreement by failing to pay Tail Compensation, and by failing to diligently review, consider, or execute licensing agreements that Earthbound had negotiated.[59]

---

[53] Am. Compl. ¶¶ 72-83; Ford's Mot. at 14-19.

[54] Ford's Mot. at 18-19; Ford's Reply Brief in Support of its Motion for Judgment on the Pleadings and Opposition Brief to Earthbound's Cross-Motion for Judgment on the Pleadings ("Ford's Reply Br.") at 13-16 (D.I. 39).

[55] Ford's Mot. at 19-21.

[56] Am. Compl. ¶¶ 63-66.

[57] *Id.* ¶¶ 68-71.

[58] Ford's Mot. at 21-24.

[59] Earthbound's Counterclaim ¶¶ 44-48.

Earthbound opposes Ford's motion, and cross-moves for judgment on Ford's declaratory judgment claim.[60] Earthbound maintains that it is entitled to Tail Compensation on all New License Agreements, including the ones that converted from Servicing-Only License Agreements.[61] Earthbound also opposes dismissal of its counterclaim against Ford.[62] Earthbound states that material factual disputes remain whether Ford considered New License Agreements, and whether it exercised "reasonable business discretion" in failing to execute them.[63]

## III. STANDARD OF REVIEW

Any party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[64] But the Court cannot grant judgment on the pleadings unless, after drawing all reasonable inferences in favor of the non-moving party, "no material factual dispute exists and the movant is entitled to judgment as a matter of law."[65] In resolving a Rule 12(c) motion, the Court accepts the truth of all well-pleaded facts and draws all reasonable factual inferences in favor of the non-movant.[66]

---

[60] *See generally* Earthbound's Mot.

[61] *Id*. at 15-21.

[62] *Id*. at 30-31.

[63] *Id*.

[64] Del. Super. Ct. Civ. R. 12(c).

[65] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[66] *See id*.

"The standard for a motion for judgment on the pleadings is almost identical to the standard for a motion to dismiss."[67] The Court thus accords the party opposing a Rule 12(c) motion the same benefits as a party defending a Rule 12(b)(6) motion.[68] Given that resemblance, the Court engages certain 12(b)(6) procedures during a 12(c) review.[69]

Cross-motions for judgment on the pleadings are analytically similar to cross-motions for summary judgment.[70] As a result, "where cross-motions for judgment on the pleadings are filed on a particular issue and no material facts are in dispute thereon[,] the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[71]

But, the mere presence of cross-dispositive motions "does not act *per se* as a concession that there is an absence of factual issues."[72] Too, a Rule 12(c) motion is "a proper framework for enforcing *unambiguous* contracts" that have just one

---

[67] *Silver Lake Off. Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Ct. Jan. 17, 2014) (internal quotations omitted).

[68] *E.g.*, *Alcoa World Alumina LLC v. Glencore Ltd.*, 2016 WL 521193, at *6 (Del. Super. Ct. Feb. 8, 2016), *aff'd sub nom.*, *Glencore Ltd. v. St. Croix Alumina, LLC*, 150 A.3d 1209 (Del. 2016).

[69] *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 499-500 (Del. Ch. 2000).

[70] *E.g.*, *Silver Lake*, 2014 WL 595378, at *6; *see generally* Del. Super. Ct. Civ. R. 56(h).

[71] *Indian Harbor Ins. Co. v. SharkNinja Operating LLC*, 2020 WL 6795965, at *3 (Del. Super. Ct. Nov. 19, 2020) (internal quotations and citation omitted); *see also V&M Aerospace LLC v. V&M Co.*, 2019 WL 3238920, at *3–4 (Del. Super. Ct. July 18, 2019) (concluding that the difference between judgment on the pleadings standard and the summary judgment standard was "immaterial" because a "question of law" alone was involved).

[72] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

reasonable meaning and therefore do not create material disputes of fact.[73]

## IV. DISCUSSION

### A. FORD'S DECLARATORY JUDGMENT CLAIM CANNOT BE JUDGED ON THE PLEADINGS BECAUSE OF THE AGREEMENT'S AMBIGUOUS TERMS.

Ford first moves for judgment on its request that the Court declare: (i) Earthbound is not entitled to any Tail Compensation by reason of its failure to satisfy its remittance obligation, an express condition precedent; or (ii) in the alternative, Earthbound is not entitled to any Tail Compensation on Servicing-Only License Agreements, irrespective of whether they converted to New License Agreements during the Extension Term provided for in the Third Amendment.[74] Earthbound cross-moves for judgment on that same issue.[75]

Delaware's Declaratory Judgment Act empowers this Court to "declare rights, status and other legal relations whether or not further relief is or could be claimed."[76] But "[n]ot all disputes . . . are appropriate for [a declaration] when the parties request it."[77] The Court "has discretion to decline declaratory judgment jurisdiction, and

---

[73] *Bay Point Cap. Partners L.P. v. Fitness Recovery Holdings, LLC*, 2021 WL 5578705, at \*4 (Del. Super. Ct. Nov. 30, 2021) (emphasis added) (citations omitted).

[74] Ford's Mot. at 14-19.

[75] Earthbound's Mot. at 15-29.

[76] DEL. CODE ANN. tit. 10, § 6501-13 (2022). The "purpose of the Declaratory Judgment Act is to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance the stage at which a matter is traditionally justiciable." *Reylek v. Albence*, 2023 WL 4633411, at \*6 (Del. Super. Ct. July 19, 2023) (quoting *Diebold Computer Leasing, Inc. v. Commercial Credit Corp.*, 267 A.2d 586, 591–92 (Del. 1970)) (cleaned up).

[77] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at \*25 (Del. Super. Ct. Aug. 16, 2021)

will do so where a proposed declaration would not advance the litigation, but rather, would waste judicial resources."[78]

Prior to entertaining a declaratory judgment action, the Court must first make a threshold determination that an "actual controversy" exists.[79] An "actual controversy" has four elements:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[80]

Here, neither party disputes that an actual controversy exists. And it is evident that (1) the contested terms of the Agreement involve Ford's right to royalties; (2) both parties have an interest in those royalties; (3) those interests are real and adverse; and (4) the issue is ripe for judicial determination. So the Court may indeed exercise its declaratory judgment jurisdiction.

Delaware law governs the Agreement, and in Delaware, a contract's proper construction is a question of law.[81] "A court must accept and apply the plain

---

(quoting *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 816 (Del. 2018)).

[78] *Id*. (citations omitted).

[79] *Reylek*, 2023 WL 4633411, at *6 (quoting *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216 (Del. 2014)).

[80] *Id*. (citations omitted).

[81] *E.g.*, *Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266–67 (Del.

meaning of an unambiguous term in . . . the contract language . . ., insofar as the parties would have agreed *ex ante*."[82] "Absent some ambiguity, Delaware courts will not destroy or twist [contract] language under the guise of construing it."[83] But a contract "is not ambiguous simply because the parties disagree on its meaning."[84] Ambiguity exists only if disputed contract language is "fairly or reasonably susceptible of more than one meaning."[85]

As a question of law, a contract's proper interpretation can be resolved on a pleadings-stage motion.[86] But, at the pleadings stage, the movant must show the terms supporting its motion are indeed unambiguous.[87] At the pleadings stage of a

---

2017).

[82] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 740 (Del. 2006).

[83] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992) (citing *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. Super. Ct. 1982)).

[84] *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (Del. 1997); *see also Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 847 n.68 (Del. 2019) (explaining that, because a contract's meaning is a question of law, a court, not the parties, must decide whether the contract is ambiguous or not).

[85] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012) (citing *GMG Cap. Invest., LLC v. Athenian Venture Part. I, L.P.*, 36 A.3d 776, 780 (Del. 2012)).

[86] *See, e.g.*, *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("Under Delaware law, the proper interpretation of language in a contract is a question of law. Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language."); *Aveanna Healthcare, LLC v. Epic/Freedom, LLC*, 2021 WL 3235739, at *12 (Del. Super. Ct. July 29, 2021) ("'[J]udgment on the pleadings is a proper framework for enforcing unambiguous contracts,' which only have one reasonable meaning and therefore do not create 'material disputes of fact.'" (alteration in original) (quoting *Lillis v. AT&T Corp.*, 904 A.2d 325, 329–30 (Del. Ch. 2006))).

[87] *See, e.g.*, *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003); *GMG Cap. Invs., LLC*, 36 A.3d at 783 ("[W]here two reasonable minds can differ as to the contract's meaning, a factual dispute results. . . . In those cases, [judgment as a matter of law] is improper."

contract dispute, the Court "cannot choose between two differing reasonable interpretations of ambiguous" contract language.[88] So, to succeed, the movant's interpretation must be "the *only* reasonable construction as a matter of law."[89] Otherwise, "for purposes of deciding" the motion, the language must be resolved in the non-movant's favor.[90]

At issue are Sections 7 and 8 of the amended WRA. Section 7(c) governs Earthbound's compensation. It starts out, "[s]ubject to [Earthbound]'s performance of the terms and conditions of this Agreement and *on the condition that Representative is not in default or otherwise in breach hereof* and as compensation in full for all of Representative's services hereunder, Representative shall be entitled to receive compensation as follows . . . ."[91]

Section 7(c) then defines Earthbound's compensation amounts for New

---

(citations omitted)).

[88] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996); *see also Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1292 (Del. 2007) ("Even if the Court considers the movant's interpretation more reasonable than the non-movant's, on a Rule 12(b)(6) motion it is error to select the 'more reasonable' interpretation as legally controlling." (cleaned up)).

[89] *VLIW Tech.*, 840 A.2d at 615 (emphasis in original).

[90] *Id.*; *see also CRE Niagara Holdings, LLC v. Resorts Grp., Inc.*, 2021 WL 1292792, at *10 (Del. Super. Ct. Apr. 7, 2021) ("Faced with a question of contract interpretation on a motion to dismiss, the Court must determine whether the contractual language is unambiguous. If so, the Court must give effect to its meaning. If, however, the contractual language is [ambiguous], the Court must resolve the ambiguity in favor of the non-moving party." (alterations and internal quotations omitted)).

[91] WRA ¶ 7(c) (as amended by Second Amendment ¶ 6) (emphasis added).

License Agreements, Servicing-Only License Agreements, and Referred License Agreements. Pursuant to Section 7(c)(ii), "[d]uring any extension term after the Initial Term of this Agreement, such Servicing-Only License Agreements shall convert to New License Agreements, and shall be subject to [Earthbound]'s Compensation . . . at the rate of twenty-six percent (26%) of Gross Revenues, for the remainder of the Term."[92]

Section 7(e) governs Tail Compensation. It reads:

> Except as otherwise provided for in this Agreement, after the expiration of the Initial Term and any extension hereof, *provided that Representative shall have complied with all of its obligations hereunder*, Representative shall be entitled to seventy (70%) of Representative's Compensation actually received under New License Agreements and New Referred License Agreements, for a period of twenty-four (24) months after such termination or expiration of this Agreement.[93]

The section further states: "For the avoidance of doubt, [Earthbound] shall be entitled to receive the foregoing percentages of Compensation with respect to all Royalties . . . that are earned prior to, but received after, any of the foregoing applicable periods."[94]

Under Section 8, "within thirty (30) days after the end of each calendar month, Earthbound shall furnish Ford with a full and accurate statement of all Royalties

---

[92]   *Id*. ¶ 7(c)(ii) (as amended by Second Amendment ¶ 6).

[93]   *Id*. ¶ 7(e) (as amended by Second Amendment ¶ 6) (emphasis added).

[94]   *Id*.

actually received by Earthbound during the preceding calendar month under any License Agreements . . . . Simultaneously with the submission of such statement, Earthbound shall pay to Ford its Royalties; *provided* that Earthbound may deduct therefrom its fee with respect to any such Royalties and remit only the net amount to Ford."[95]

Ford first argues that these provisions, read together, unequivocally establish that Section 8's remittance requirements are express conditions precedent to Earthbound's right to Tail Compensation in Section 7(e).[96] Therefore, Ford says, Earthbound is not entitled to any Tail Compensation as a result of its failure to remit the royalties in question.[97]

A condition precedent is "an act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises."[98] Although there are no particular words that must be used to create a condition precedent, a condition precedent must be expressed clearly and unambiguously.[99] Here, the language "on the condition that" indicates an intent by both parties to condition the provisions of 7(c) on two things: (1) that Earthbound is not in default, and (2) that

---

[95] *Id*. ¶ 8 (emphasis in original) (cleaned up).

[96] Ford's Mot. at 14-18.

[97] *Id*.

[98] *Aveanna Healthcare, LLC*, 2021 WL 3235739, at *25 (quoting *Thomas v. Headlands Tech Principal Holdings, L.P.*, 2020 WL 5946962, at *5 (Del. Super. Ct. Sept. 22, 2020)).

[99] *Id.* (internal citations omitted).

Earthbound is not in breach. And the phrase "provided that" in Section 7(e) conditions that provision on Earthbound's compliance "with all of its obligations hereunder."

The question, then, is whether the Court should declare on the pleadings that Earthbound is "in default" or "in breach" or in compliance "with all of its obligations hereunder." Default and breach are defined terms in the WRA. According to Section 15, "The following shall be a default under the Agreement (hereinafter "a breach") . . . a breach by Earthbound of any of Earthbound's obligations, representations or warranties."[100]

The Court cannot declare at this early stage that Earthbound failed to satisfy Section 7's conditions precedent, precluding Earthbound from any Tail Compensation.

First, Ford's interpretation of default and breach is not the only reasonable interpretation of those defined terms and their usage in the Agreement. Section 15 specifies that a breach or default only occurs if Earthbound breaches its obligations, representations, or warranties. Earthbound's obligations are found in Section 6 (titled "Obligations"),[101] and Earthbound's representations and warranties are found in Section 11 (titled "Representations and Warranties; Indemnity and

---

[100] WRA ¶ 15 (cleaned up).

[101] *Id.* ¶ 6.

- 22 -

Undertaking").[102]  Comparatively, the provisions allegedly breached are found in Section 8, titled "Statements, Payment, and Audits."[103]  One reasonable interpretation of the defined terms "breach" and "default" is that they only apply to Earthbound's obligations in Section 6 and Earthbound's representations and warranties in Section 11—not the provisions governing statements, payments, and audits in Section 8.  Accordingly, a violation of Section 8 does not unambiguously mean a "breach" or "default" as those terms are used in Section 7 and defined throughout the Agreement.

Second, the phrase "obligations hereunder" in Section 7(e) has multiple reasonable interpretations.  As Earthbound posits, the term "obligations hereunder" may refer only to Section 7's provisions.  Indeed, the parties use broader language in Section 7(c)'s condition than in Section 7(e), indicating an intent to apply Section 7(e)'s condition more narrowly.[104]  And even if the condition in Section 7(e) does

---

[102]  *Id.* ¶ 11.

[103]  *Id.* ¶ 8.

[104]  *Compare id.* ¶ 7(c) (as amended by Second Amendment ¶ 6) ("*Subject to Representative's performance of the terms and conditions of this Agreement and* on the condition that Representative is not in default or otherwise in breach hereof . . . .") *with id.* ¶ 7(e) (as amended by Second Amendment ¶ 6) ("*Except as otherwise provided for in this Agreement* . . . provided that Representative shall have complied with all of its obligations hereunder . . . .") (emphasis added); *see Salamone v. Gorman*, 106 A.3d 354, 367-68 (Del. 2014) ("When interpreting a contract, this Court 'will give priority to the parties' intentions as reflected in the four corners of the agreement,' construing the agreement as a whole and giving effect to all its provisions." (quoting *GMG Capital Inv., LLC*, 36 A.3d at 779)); *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007), *aff'd*, 945 A.2d 594 (Del. 2008) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court." (internal

apply beyond Section 7's provisions, the term "obligations" may only refer to Earthbound's obligations contained in Section 6. The phrase "obligations hereunder" does not unambiguously apply to Section 8's remittance requirements.

In addition, Section 8 provides separate remedies for violations of its terms. As previously discussed, Section 8(a) requires that Earthbound must remit royalties to Ford "within thirty (30) days after the end of each calendar month . . .; provided that Earthbound may deduct therefrom its fee with respect to any such Royalties and remit only the net amount to FORD."[105] But the section continues: "Late payments shall bear interest at a rate equal to the prime rate as published in the Wall Street Journal per month until paid."[106] The section further states that,

> if [Earthbound] (i) is more than thirty (30) calendar days late in paying FORD its share of Gross Revenues twice in any one calendar year, (ii) materially underpays FORD its share of Gross Revenues twice in any one calendar year (and does not cure within thirty (30) calendar days from notice from FORD in each instance), . . . then . . . FORD shall have the right, but not the obligation, at any time upon written notice to Representative, to elect to directly receive payments under any or all License Agreements covered by this Agreement and to pay to Representative its Compensation.[107]

"The primary goal of contract interpretation is to satisfy the reasonable expectations of the parties at the time they entered into the contract, which often requires courts

---

citations omitted)).

[105] WRA ¶ 8(a) (cleaned up).

[106] *Id.*

[107] *Id.*

to engage in an analysis of the intent or shared understanding of the parties at the time of the contract."[108] In doing so with conflicting provisions, Delaware courts favor the specific over the general because of "the reasonable inference that specific provisions express more exactly what the parties intended."[109]

Section 8's plain terms indicate that the parties agreed to alternative contractual remedies for late remittance by Earthbound. Earthbound argues that, as specific provisions, these contracted-for alternative remedies mean that Earthbound's purported violations of Section 8 do not constitute breaches of the entire Agreement.[110] Ford argues that violations of Section 8 constitute breaches of the entire Agreement, alternative remedies notwithstanding.[111] Both parties have proffered reasonable interpretations, as the impact of Section 8's alternative remedies on the entire Agreement is unclear. And, a Rule 12(c) judgment on the pleadings is inappropriate to resolve the ambiguity.[112]

---

[108] *ITG Brands, LLC v. Reynolds Am., Inc.*, 2019 WL 4593495, at *9 (Del. Ch. Sept. 23, 2019) (internal quotations omitted).

[109] *Id.* (quoting *Katell v. Morgan Stanley Grp., Inc.*, 1993 WL 205033, at *4 (Del. Ch. June 8, 1993)).

[110] Earthbound's Mot. at 24-26. Indeed, Section 8's plain terms indicate that the parties anticipated Earthbound's royalty payment may, at times, be late, and contracted for remedies if so. Both parties, then, may have reasonably expected that the punishment for late payment would be repayment with interest, along with Ford's eventual ability to receive payment directly from licensees; not breach or default of the entire Agreement.

[111] Ford's Mot. at 14-18.

[112] *E.g.*, *ITG Brands, LLC*, 2019 WL 4593495, at *9 ("When a contractual provision is ambiguous, judgment on the pleadings is not appropriate to resolve the ambiguity.").

Ford alternatively asks the Court to declare that Earthbound is not entitled to any Tail Compensation on Servicing-Only License Agreements, irrespective of whether they converted to New License Agreements during the Extension Term provided for in the Third Amendment, for payments made after February 8, 2022.[113]

Ford is not entitled to a pleadings-stage declaration on its alternative ask. The Tail Compensation provision provides that Earthbound is entitled to payments "earned prior to, but received after, any of the foregoing applicable periods."[114] One reasonable interpretation of this provision is that Earthbound *is* entitled to compensation for payments *made after* February 8, 2022, so long as those royalties were *earned prior to* that date. Further, at the pleadings stage, it is unknown whether the royalties in question were "earned prior to" "any of the foregoing applicable periods"—for that, discovery is needed. Additionally, the phrase "any of the foregoing applicable periods" is, at best, ambiguous; there are multiple "foregoing periods" that it could be referring to. Because of these outstanding factual issues, the Court will not resolve Ford's alternative declaration request in either party's favor.

Ford is not entitled to a Court declaration at this stage. And neither is Earthbound, because the provisions in question have multiple reasonable

---

[113] Ford's Mot. at 18-19.

[114] WRA ¶ 7(e) (as amended by Second Amendment ¶ 6).

interpretations resulting in numerous factual disputes. Accordingly, both Ford and Earthbound's motions for judgment on the pleadings with respect to Ford's Count III are **DENIED**.

### B. FORD'S BREACH-OF-CONTRACT AND UNJUST ENRICHMENT CLAIMS REQUIRE DISCOVERY TOO.

Ford also moves for judgment on its breach-of-contract and unjust enrichment claims, as to liability only.[115] To state a breach-of-contract claim, a claimant must allege: "(1) the existence of a contractual obligation; (2) a breach of that obligation; and (3) damages resulting from the breach."[116] And under the standard Delaware formulation of an unjust enrichment claim, a plaintiff must plead and later prove "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[117]

Ford asks the Court to grant its breach-of-contract and unjust enrichment claims on its pleadings by simply reiterating its declaratory judgment arguments in single paragraphs.[118] But as previously discussed, Ford is not entitled to judgment

---

[115] Ford's Mot. at 19-20.

[116] *E.g.*, *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at \*3 (Del. Super. Ct. Feb. 22, 2021).

[117] *E.g.*, *Garfield on behalf of ODP Corp. v. Allen*, 277 A.3d 296, 341 (Del. Ch. 2022) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010)).

[118] Ford's Mot. at 19-20.

on the pleadings for its declaratory judgment claim, so its other claims must be addressed independently.

Ford is nowhere close to due a pleadings-stage judgment on its breach-of-contract and unjust enrichment claims. Issues of material fact exist as to whether Earthbound breached the agreement at all.[119] Too, the materiality of any alleged breach is a non-briefed factual issue.[120] So, disposal of Ford's breach-of-contract claim is inappropriate.[121] And Ford's unjust enrichment claim is made despite the presence of an enforceable contract, so it cannot be disposed of in Ford's favor.[122] As a result, Ford is not entitled to judgment on either claim.

Accordingly, Ford's motion for judgment on its Counts I and II is **DENIED**.

## C. EARTHBOUND'S COUNTERCLAIM SURVIVES.

Last, Ford moves for judgment on the pleadings dismissing Earthbound's

---

[119] *See* Part IV(A), *supra*. In addition to the issues of contractual interpretation discussed previously, Earthbound says that it has no way of knowing the total amount of Tail Compensation it is entitled to because of Ford's refusal to engage or provide royalty reports. That factual issue necessitates discovery.

[120] Delaware courts routinely recognize that materiality is a question of fact that is ordinarily not suited for judgment as a matter of law. *See, e.g.*, *IP Network Sols., Inc. v. Nutanix, Inc.*, 2022 WL 369951, at *11 (Del. Super. Ct. Feb. 8, 2022).

[121] *See Handler Corp. v. W. Am. Ins. Co.*, 2022 WL 200353, at *2 (Del. Super. Ct. Jan. 21, 2022) ("Where the pleadings raise 'any material issue of fact,' denial of the motion is appropriate." (quoting *Fagani v. Integrity Fin. Corp.*, 167 A.2d 67, 75 (Del. Super. Ct. 1960))).

[122] Unjust enrichment is typically available only in "the absence of a formal contract." *ID Biomed. Corp. v. TM Techs., Inc.*, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995); *see also Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 875 (Del. 2020) (enumerating unjust enrichment elements, one of which being "the absence of a remedy provided by law" (internal quotations omitted)). Neither party has questioned the enforceability of the WRA or its amendments.

breach-of-contract counterclaim. Earthbound's counterclaim makes two primary allegations: (1) that Ford breached the Agreement by not paying the Tail Compensation it owed; and (2) that Ford breached the Agreement by failing to diligently review and execute licensing agreements Earthbound had negotiated.[123] The same Delaware laws of contract interpretation previously discussed apply to Earthbound's counterclaim.[124]

Here, again, discovery is required to sort out Ford's alleged breaches. For example, it is unclear at this early stage what the parties' business practices were with regard to royalty and fee payments.[125] In addition, the extent to which Ford reviewed and executed any licensing agreements is unknown.[126] Without such discovery, the Court cannot dismiss Earthbound's counterclaim.

---

[123] Earthbound's Counterclaim ¶¶ 44-48.

[124] *See* Part IV(A), *supra*.

[125] *See* WRA ¶ 8(a) ("Representative shall furnish FORD with a full and accurate statement of all Royalties actually received by Representative . . . Simultaneously with the submission of such statement, Representative shall pay to FORD its Royalties; *provided* that Representative may deduct therefrom its fee with respect to any such Royalties and remit only the net amount to FORD" (italics in original)).

Given WRA ¶ 8(a)'s apparent sequencing, the Court at oral argument questioned Earthbound's contention that Ford *first* failed to pay Tail Compensation. There, for the first time, Earthbound unveiled certain business practices involving Ford's royalty reports and Earthbound's dependency on them *prior to* remittance. Clearly, there is more that needs to be discovered about these royalty and fee payments before the Court can definitively declare a breach occurred and by whom.

[126] *See* WRA 6(j)(ii) ("FORD and/or its affiliated companies shall in their commercially-reasonable discretion consider all proposals presented by Representative that comply with the Annual Business Plan, though Ford shall at all times have sole discretion whether to enter into a License Agreement based on any proposal").

Accordingly, Ford's motion for judgment on Earthbound's counterclaim is **DENIED**.

## V. CONCLUSION

Ford and Earthbound bring to the Court what they both say are indisputable contractual reads of a complex agreement.  But because both reads are reasonable, judgment on these pleadings based solely on the contractual language is inappropriate.  And within those reads lie multiple factual disputes yet to be resolved.  To resolve those disputes, discovery is necessary.  The parties' cross-motions for judgment on the pleadings are hereby **DENIED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

_____
Paul R. Wallace, Judge

Original to Prothonotary

cc: All Counsel via File and Serve